Eric H. De Wames (Bar No. 229745)
edewames@sullivanattorneys.com
Ryan J. Carlson (Bar No. 308270)
rcarlson@sullivanattorneys.com
**MICHAEL SULLIVAN & ASSOCIATES, LLP**
6203 San Ignacio Avenue, Suite 110
San Jose, California 95119
Tel: (619) 757-2750
Fax: (844) 910-7850

Andrew J. Kubik (Bar No. 246902)
ajk@andrewkubiklaw.com
**LAW OFFICE OF ANDREW J. KUBIK**
10921 Derrydown Way
San Diego, California 92103
Tel: (619) 961-8987

Attorneys for Plaintiff **WESLEY AFRICA**, on behalf of himself and all others similarly situated

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

WESLEY AFRICA, an individual, on behalf of himself and all others similarly situated,

Plaintiff,

vs.

VISION PATH, INC., d/b/a HUBBLE, a Delaware Corporation; and DOES 1-25, inclusive

Defendants.

Case No.: 2:23-CV-04570-GW-MBK

**PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR CLASS CERTIFICATION**

Date: October 15, 2026
Time: 8:30 AM
Dept: 9D
Judge: Hon. George H. Wu

Magistrate: Hon. Michael B. Kaufman
Complaint Filed: 04/28/23

# TABLE OF CONTENTS


I. INTRODUCTION ........ 1

II. RELEVANT PROCEDURAL HISTORY ........ 2

III. FACTS & LAW COMMON TO THE CLASS ........ 2

A. The Use of Contact Lenses Poses Risks to Consumers' Health; One Size Does Not Fit All ........ 3

B. All of Defendant's Contact Lens Sales Required an Unaltered, Verified Prescription ........ 5

C. Defendant's Business Model & Practices ........ 7

D. Defendant's Lenses Were Very Rarely Prescribed ........ 9

E. Defendant Made the Same Misrepresentations and Omissions to the Entire Proposed Class ........ 10

**1.** Misrepresentations ........ 10

**2.** Omissions ........ 11

IV. LEGAL ARGUMENT ........ 12

A. Class Certification Should be Granted ........ 12

B. The Class is Adequately Defined & Ascertainable ........ 13

C. Plaintiff Satisfies the Rule 23(a) Prerequisites ........ 14

**1.** The Proposed Class is Sufficiently Numerous ........ 14

**2.** Plaintiff's Claims Raise Issues Common to the Class ........ 14

**3.** Plaintiff's Claims Are Typical of the Class ........ 15

**4.** Plaintiff and Counsel Will Adequately Represent the Class. 16

D. The Requirements of Rule 23(b)(3) Are Satisfied ........ 17

**1.** Common Issues Predominate ........ 18

a. Reliance and Causation Do Not Defeat Predominance ........ 20

i) The Risk of Harm Creates a Presumption of Materiality ........ 23

ii) Common Evidence of Materiality ........ 24

b. UCL "Unlawful" and "Unfair" Claims ........ 25

**2.** Relief Can Be Calculated Using Common Sources of Proof ........ 25

**3.** A Class Action is Superior to Other Available Methods for Adjudicating Class Members' Claims .................................. 28

E. The Requirements of Rule 23(b)(2) Are Satisfied ........................... 29

V. CONCLUSION ........................................................................... 30

# TABLE OF AUTHORITIES

## Cases

*AMANDA JOLICOEUR-LOUIS & SOPHIE PHILIPS, v. CONSERVICE, LLC*, 2026 WL 1849879 (C.D. Cal. May 11, 2026 .......... 18

*Amchem Prods. v. Windsor, Inc.*, 521 U.S. 591(1997) .......... 12, 17, 18

*Amgen Inc. v. Conn. Ret. Plans & Trust Funds*, 133 S. Ct. 1184 (2013)13, 18, 23, 28

*Banks v. Nissan N. Am., Inc.*, 301 F.R.D. 327 (N.D. Cal. 2013).......... 14

*Bateman v. Am. Multi-Cinema, Inc.*, 623 F.3d 708 (9th Cir. 2010).......... 13

*Beck-Ellman v. Kaz USA, Inc.*, 283 F.R.D. 558 (S.D. Cal. 2012).......... 14, 21

*Beckman v. Arizona Canning Co., LLC*, No. 2019 WL 4277393 (S.D. Cal. Sept. 9, 2019) .......... 20

*Bradach v. Pharmavite, LLC*, 735 F.App'x 251 (9th Cir. 2018).......... 18, 19

*Brady v. Bayer Corp.*, 26 Cal. App. 5th 1156 (2018) .......... 20

*Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1121 (9th Cir. 2017).......... 13

*Brown v. Hain Celestial Grp. Inc.,* 2015 WL 3398415 (N.D. Cal. May 26, 2015) .......... 22

*Bruno v. Quten Research Inst., LLC*, 280 F.R.D. 524 (C.D. Cal. 2011).... 15, 18, 21

*Bruton v. Gerber Prods. Co.*, 703 F. App'x 468 (9th Cir. 2017) .......... 25

*Circle Click Media LLC v. Regus Mgmt. Grp. LLC,* 2015 WL 6638929 (N.D. Cal. Oct. 29, 2015).......... 22

*Clevenger v. Welch Foods Inc.*, 342 F.R.D. 446 (C.D. Cal. 2022).......... 24

*Colgan v. Leatherman Tool Grp., Inc.*, 135 Cal. App. 4th 663 (2006).......... 23, 26

*Comcast Corp. v. Behrend,* 569 U.S. 27 (2013).......... 25

*Daniel v. Ford Motor Co.*, 806 F.3d 1217 (9th Cir. 2015).......... 23

*Delarosa v. Boiron, Inc.*, 275 F.R.D. 582 (C.D. Cal. Aug. 24, 2011).......... 21, 29

*Doe 1 v. AOL LLC*, 719 F. Supp. 2d 1102 (N.D. Cal. 2010) .......... 26

*Dolphin Tours, Inc. v. Pacifico Creative Serv., Inc.*, 773 F.2d 1506 (9th Cir. 1985) ....................28

*Edwards v. The First Am. Corp.*, 251 F.R.D. 454 (C.D. Cal. 2008) ....................18

*Elkies v. Johnson & Johnson Servs., Inc.*, 2018 WL 11223465 (C.D. Cal. Oct. 18, 2018) ....................20

*Ellis v. Costco Wholesale Corp.*, 657 F.3d 970 (9th Cir. 2011) ....................13, 16

*Falco v. Nissan N. Am., Inc.*, 2016 U.S. Dist. LEXIS 46115 (C.D. Cal. Apr. 5, 2016) ....................24

*Favell v. Univ. of S. California*, 2025 WL 1774715 (C.D. Cal. May 13, 2025) ....24

*Forcellati v. Hyland's, Inc.*, No. CV 12-1983-GHK (MRWx), 2014 WL 1410264 (C.D. Cal. Apr. 9, 2014) ....................12, 15, 19, 20, 21

*Fox v. Nissan N. Am.*, Inc., 2016 Cal. Super. LEXIS 5723 ....................24

*FTC v. QYK Brands LLC*, No. SACV 20-1431 PSG (KESx), 2022 U.S. Dist. LEXIS 67380 (C.D. Cal. Apr. 6, 2022) ....................24

*Gartin v. S & M Nutec, LLC*, 245 F.R.D. 429 (C.D. Cal. 2007) ....................18

*Guido v. L'Oreal, USA, Inc.*, 2013 U.S. Dist. LEXIS 94031, 2013 WL 3353857 ....................15, 16, 23

*Gutierrez v. Carmax Auto Superstores Cal.*, 19 Cal. App. 5th 1234 (2018) .........23

*Gutierrez v. Wells Fargo Bank NA*, 589 Fed. Appx. 824 (9th Cir. 2014) ..............22

*Halliburton Co. v. Erica P. John Fund, Inc.*, 573 U.S. 258 (2014) ....................26

*Hamm v. Mercedes-Benz USA, LLC*, 2021 WL 1238304 (N.D. Cal. Apr. 2, 2021) ....................14

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1998) ....................15, 16, 18, 19

*Hanon v. Dataproducts Corp.*, 976 F.2d 497 (9th Cir. 1992) ....................15

*Hodsdon v. Mars, Inc.*, 891 F.3d 857 (9th Cir. 2018) ....................24

*In re Delta Air Lines, Inc.*, 2023 WL 2347074 (C.D. Cal. Feb. 8, 2023) ..............14

*In re High-Tech Emple. Antitrust Litig.*, 985 F. Supp. 2d 1167 (N.D. Cal. 2013) ....................18

*In re JUUL Labs, Inc., Mktg. Sales Pracs. & Prods. Liab. Litig.*, 609 F. Supp. 3d 942 (N.D. Cal. 2022)....................27

*In re POM Wonderful Mktg. & Sales Practices Litig.*, 2012 WL 4490860 (C.D. Cal. Sept. 28, 2012)....................23

*In re Tobacco II*, 46 Cal.4th at 313 ....................12, 19, 20, 21, 22

*In re Yahoo Mail Litig.*, 308 F.R.D. 577 (N.D. Cal. 2015) ....................29

*Jeruchim v. J.M. Smucker Co.*, 2026 WL 178565 (N.D. Cal. Jan. 22, 2026)....................25

*Johns v. Bayer Corp*., 280 F.R.D. 551 (S.D. Cal. 2012)....................21

*Johnson v. Glock, Inc.*, 2024 U.S. Dist. LEXIS 184041 (N.D. Cal. Sep. 30, 2024) ....................27

*Just Film, Inc. v. Buono,* 847 F.3d 1108 (9th Cir. 2017)....................25

*Keegan v. Am. Honda Motor Co*., 284 F.R.D. 504 (C.D. Cal. 2012) ....................13, 21

*Krueger v. Wyeth, Inc.*, 2011 WL 8971449 (S.D. Cal. Mar. 30, 2011) ....................14, 20

*Krueger v. Wyeth, Inc.*, 310 F.R.D 468 (S.D. Cal. 2015)....................13, 27

*Kwikset Corp*., *v. Superior Court*, 51 Cal. 4th 310 (2011)....................19

*Lavie v. Proctor & Gamble Co.*, 105 Cal. App. 4th 496 (2003) ....................21

*Loritz v. Exide Techs*., 2015 WL 6790247 (C.D. Cal. July 21, 2015) ....................28

*Lytle v. Nutramax Labs., Inc.*, 114 F.4th 1011 (9th Cir. 2024)....................15, 28

*Marsu, B.V. v. Walt Disney Co.,* 185 F.3d 932 (9th Cir.1999) ....................28

*Mass. Mutual,* 97 Cal. App. 4th 1282 (2002)....................21, 23

*Mazza v. Am. Honda Motor Co*., 666 F.3d 581 (9th Cir. 2012)....................14

*McKinnon v. Dollar Thrifty Auto. Grp. Inc.,* 2015 WL 4537957 (N.D. Cal. July 27, 2015)....................22

*Moore v. Ulta Salon, Cosmetics & Fragrance, Inc.*, 311 F.R.D. 590 (C.D. Cal. 2015) ....................28

*Moorer v. StemGenex Med. Grp., Inc.*, 2017 U.S. Dist. LEXIS 53294 (S.D. Cal. April 6, 2017) ....................21

*Noohi v. Johnson & Johnson Consumer Inc.*, 146 F.4th 854 (9th Cir. 2025)........21

*O'Donovan v. CashCall, Inc.*, 278 F.R.D. 479 (N.D. Cal. 2011) ....................19

*Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC,* 31 F.4th 651 (9th Cir. 2022)....................26

*Parsons v. Ryan*, 754 F.3d 657 (9th Cir. 2014)....................14

*People ex rel. Kennedy v. Beaumont Inv., Ltd.*, 111 Cal. App. 4th 102 (2003).....26

*Pulaski & Middleman, LLC v. Google, Inc.,* 802 F .3d 979 (9th Cir. 2015)25, 26, 28

*Rodriguez v. Hayes*, 591 F.3d 1105 (9th Cir. 2010)....................15

*Rogerson Aircraft Corp.* v. *Fairchild Indus., Inc.,* 632 F. Supp. 1494 (C.D. Cal. 1986)....................28

*Romero v. Producers Dairy Foods, Inc.*, 235 F.R.D. 474 (E.D. Cal. 2006)..........14

*Rose v. Bank of Am., N.A.*, 57 Cal.4th 390 (2013) ....................20

*Sali v. Corona Reg'l Med. Ctr*., 889 F.3d 623 (9th Cir. 2018) ....................13

*Spann v. J.C. Penney Corp.*, 307 F.R.D. 508 (C.D. Cal. 2015) ....................26, 28

*State of Texas v. Vision Path, Inc.* Bexar County Court, Case No. 2022CI09972....................9

*Stearns v. Ticketmaster Corp*., 655 F.3d 1013 (9th Cir. 2011)....................15, 20, 23

*Tait v. BSH Home Appliances Corp*., 289 F.R.D. 466 (C.D. Cal. Dec. 20, 2012) ....................19, 21

*Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442 (2016)....................18

*United States of America v. Vision Path, Inc. d/b/a Hubble Contacts.* US Dist. Ct., Dist of D.C., 1:22-cv-00176....................9, 10

*Vaquero v. Ashley Furniture Indus., Inc.,* 824 F.3d 1150 (9th Cir. 2016)............25

*Vinole v. Countrywide Home Loans, Inc.*, 571 F.3d 935 (9th Cir. 2009) ..............29

*Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011)...............................14, 15, 29

*Walters v. Reno*, 145 F.3d 1032 (9th Cir. 1998) ..................................................29

*Ward v. United Airlines, Inc.,* 2021WL 534364 (N.D. Cal. Feb. 12, 2021) ..........29

*Wiener v. Dannon Co.*, 255 F.R.D. 658 (C.D. Cal. 2009)..........................16, 17, 18

*Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168 (9th Cir. 2010)...........28

*Zeiger v. WellPet LLC*, 526 F. Supp. 3d 652 (N.D. Cal. 2021) .............................30

**Other Authorities**

5-23 Moore's Federal Practice - Civil § 23.22[1][b]............................................14

Contact Lens Rule 16 CFR § 315.5(f)......................................................................4

Contact Lens Rule 16 CFR §315 et seq....................................................................3

Contact Lens Rule 16 CFR §315.2.......................................................................5, 6

Contact Lens Rule 16 CFR §315.5..........................................................................6

Contact Lens Rule 16 CFR §315.5(a) ....................................................................10

Contact Lens Rule 16 CFR §315.5(b) ..................................................................6, 8

Contact Lens Rule 16 CFR §315.5(c) ..................................................................7, 8

Fairness to Contact Lens Consumers Act 15 USC §7603(a) .............................6, 10

Fairness to Contact Lens Consumers Act 15 USC §7603(a)(2)...............................8

Fairness to Contact Lens Consumers Act 15 USC §7603(c) ................................10

Fairness to Contact Lens Consumers Act 15 USCS §7601 et seq ...........................3

Fairness to Contact Lens Consumers Act 15 USCS 7603(f)..................................4

**Rules**

Federal Rules of Civil Procedure 23.........................................................2, 12, 13

Federal Rules of Civil Procedure 23(a)....................................................................1

Federal Rules of Civil Procedure 23(a)(1) ............................................................14

Federal Rules of Civil Procedure 23(a)(3) ........................................................15
Federal Rules of Civil Procedure 23(a)(4) ........................................................16
Federal Rules of Civil Procedure 23(b)(2) ............................................1, 2, 29, 30
Federal Rules of Civil Procedure 23(b)(3) ............................1, 2, 17, 18, 23, 25, 28
Federal Rules of Civil Procedure 23(c)(4) ......................................................2, 28
Federal Rules of Civil Procedure 30(b)(6) ..........................................................8

**Codes**

Cal. Bus. & Prof. Code§ 17203 ..................................................................26, 27
Cal. Civ. Code §1760..........................................................................................21

# I. INTRODUCTION

Under the guise of a convenient online subscription service, Defendant Vision Path, Inc. d/b/a ("Defendant" or "Hubble") built a multi-million dollar enterprise on a single, uniform deception: selling a one-size-fits-all contact lens to over 95,000 California consumers regardless of their actual prescriptions. Contact lenses are highly regulated Class-II and Class-III medical devices that require precise, individualized doctor fittings to prevent severe, vision-threatening health risks. Yet, while prominently assuring consumers on its standardized order page that it would *"verify all this information with your doctor,"* Defendant executed a broad, automated scheme of secretly substituting every order with its own Hubble-brand lenses, failing to perform actual verifications with prescribers, and concealing the substantial risks of wearing unprescribed lenses. This action presents a textbook candidate for class certification under Federal Rules of Civil Procedure 23(a), 23(b)(3), and 23(b)(2):

**Rule 23(a) Prerequisites Satisfied:** Numerosity is easily satisfied, as over 95,000 California subscribers are readily identifiable through Defendant's uniform sales records. Plaintiff Wesley Africa's claims are typical and co-extensive with the Class because he was subjected to the exact same checkout workflow, paid monthly fees for contact lenses, and suffered identical economic harm. Commonality is satisfied because all claims arise from a standardized website architecture and a uniform course of conduct.

**Predominance of Common Legal & Factual Issues (Rule 23(b)(3)):** Liability hinges on objective, binary inquiries that can be resolved *"in one stroke"*: whether Defendant's uniform misrepresentations and omissions were false, deceptive, and material to a reasonable consumer. Under California's UCL, CLRA, and FAL, individualized proof of reliance or injury is unnecessary. Materiality is presumed as a matter of law due to the severe health and safety risks associated with wearing unprescribed lenses, and is independently proven class-wide using expert evidence.

///

**Common Proof of Restitution and Damages:** Monetary recovery is easily measured using common, reliable methodologies—either through full restitution of subscription revenues generated by Defendant's unlawful sales model or via a conjoint analysis. Alternatively, even if individual damages issues were to arise, the Court can certify a liability-only class under Rule 23(c)(4).

**Superiority & Injunctive Relief (Rules 23(b)(3) & 23(b)(2)):** Class treatment is the only viable mechanism for resolving claims where individual recoveries ($30–$40 per month) are vastly dwarfed by the immense cost of litigating against a corporate defendant. Moreover, because Defendant's deceptive business practices stem from a centralized, automated model affecting all California subscribers equally, class-wide injunctive relief under Rule 23(b)(2) is critical to halt these ongoing violations and compel full public disclosure.

Because common questions of law and fact overwhelmingly predominate over any individual issues, Plaintiff respectfully requests that the Court grant class certification, appoint Plaintiff Wesley Africa as Class Representative, and appoint Plaintiff's counsel as Class Counsel.

## II. RELEVANT PROCEDURAL HISTORY

Plaintiff Wesley Africa filed the operative Fourth Amended Complaint ("4AC") on May 15, 2025. On October 10, 2025, the Court granted in part and denied in part Defendants' motions to dismiss and strike class allegations, preserving Plaintiff's Consumers Legal Remedies Act ("CLRA") and Business & Professions Code ("UCL" and "FAL") claims against Defendant Hubble while dismissing them as to the individual defendants. ECF Docs. 149, 150, 167, 168. Plaintiff now seeks Rule 23 class certification of his CLRA, UCL, and FAL claims.

## III. FACTS & LAW COMMON TO THE CLASS

Contact Lenses are classified by the Food and Drug Administration ("FDA") as class-II or class-III medical devices. See, Dr. Carol Alexander's Expert Report ("Alexander Rpt."), attached as **Exhibit 1** to the Declaration of Carol Alexander, at

012. Their manufacture and sale are highly regulated by, *inter alia*, the Fairness to Contact Lens Consumers Act (15 USCS §7601 et seq – the "FCLCA") and Contact Lens Rule (16 CFR §315 et seq. – the "CL Rule"). Because the FDA regulates contact lenses as medical devices, they are only available to consumers by way of a contact lens prescription issued by a licensed eyecare professional, referred to as the "prescriber." **Ex. 1:012**.

### A. THE USE OF CONTACT LENSES POSES RISKS TO CONSUMERS' HEALTH; ONE SIZE *DOES NOT* FIT ALL

The process of prescribing a contact lens is complex, highly detailed, and by law in all 50 states, only carried out by licensed professionals with extensive medical training. **Ex. 1:012-014**. The process starts with the prescriber performing a detailed assessment of the patient's/consumer's[1] overall health history to decide if a patient is even healthy enough to wear contact lenses. *Id.* at 014-016.

> At the conclusion of the comprehensive examination, the doctor will discuss vision correction options with the patient including glasses and contact lenses. If glasses are selected as the best choice, a prescription can be written at this time and will be released to the patient on the same day. If contact lenses are desired, a fitting appointment is required and may or may not be accomplished on the same day as the initial eye examination. *Id*.

The doctor will also consider all elements of systemic and ocular health that might impact the patient while wearing lenses – things like allergies, diabetes and even pregnancy may affect lens wear; [whether] the patient spend[s] a lot of time outdoors, [or whether] their family [has a] history of cataracts or macular degeneration. *Id*. at 017. It is during this process that the patient's "refractive error" – i.e., how far and well (or not) one can see – is tested. *Id*. at 016. Only after a prescriber determines a patient is a candidate for contact lenses and the consumer's refractive error is determined does the patient undergo an on-eye assessment, or "fitting". *Id*. at 015-016. This is the process by which the prescriber identifies the best lens, not just

[1] The term "patient" and "consumer" are used interchangeably herein.

for the patient's eye shape but also their lifestyle. *Id* at 016-017. In the case of a soft contact lens, like Hubble, a diagnostic trial contact lens is selected from the manufacturer's fitting kit and placed directly on the eye. *Id*. at 017.

After gathering patient feedback on comfort and vision, the doctor examines the lens fit. *Id*. at 018. Using a biomicroscope the doctor evaluates key measures such as base curve (which must allow adequate movement and tear exchange to reduce infection risk and support corneal health), diameter (which affects centration, comfort, and optical performance), and material (which determines oxygen permeability, tear interaction, UV protection, and edge comfort against the eyelids). *Id*. If any parameter is inadequate, the doctor tries a different lens. *Id*. Once satisfied with the fit, the doctor trains the patient on lens care, insertion, and removal. *Id*. Patients typically return in about a week to report their experience. *Id*. The doctor re-examines the eyes for signs of adverse reactions requiring changes to lens type, fit, or power, and addresses questions about wear, risks, and troubleshooting. *Id*. This follow-up education helps prevent minor issues from progressing into serious, vision-threatening complications. *Id*.

The on-eye evaluation gives both the doctor and patient confidence that the patient will be successful with the lenses. *Id*. at 020. If there is no lens change warranted and the doctor is convinced that there is minimal risk for the patient, a "contact lens prescription" will be released. *Id*. at 019. Given the time spent on examinations and thoroughness of the fitting process, the patient's prescription is clearly designed to meet their specific health and vision needs. *Id.* at 020. Moreover, the risks of filling a prescription with altered or incorrect parameters are serious and vast. *Id*. at 022-024 and 036-038. This is one reason (of many) why altering a CLRX is prohibited by both the CL Rule and FCLCA. 16 CFR § 315.5(f); 15 USCS 7603(f).

Dr. Alexander identifies many of the risks associated with wearing the wrong or an altered CLRX. *Id*. at 036-038. These include, *inter alia*, the cornea and surrounding tissues becoming hypoxic (not getting enough oxygen) leading to

potential for neovascularization of the cornea, eye redness, or eye infection which can lead to eye damage, reduced vision or permanent vision loss. *Id*. Manufacturer specific edge design changes can lead to poor comfort or damage to the lining of the eyelids resulting in itching, discharge, decentered lenses all of which can reduce wearing time and create reduced vision. *Id*. at 038.

Risks associated with using the wrong base curve include, *inter alia*, the potential for the lens to fit too tightly or too loosely against the eye surface resulting in abrasions that can lead to infection and ulceration, discomfort while wearing, improper centration and tear exchange resulting in blurred or fluctuating vision. *Id*.

Risks associated with using the wrong diameter include, *inter alia,* poorly fitting contact lenses that can result in poor or fluctuating vision, dryness around the edge of the lens creating conjunctival redness and inflammation. *Id*. Small changes in diameter can create significant change in fit performance by concomitantly changing the cornea to base curve relationship. *Id*.

### B. ALL OF DEFENDANT'S CONTACT LENS SALES REQUIRED AN UNALTERED, VERIFIED PRESCRIPTION

The terms "Contact Lens" and "Contact Lens Prescription" both have very specific and clear definitions under applicable law. According to 16 CFR §315.2, "Contact Lens means any contact lens for which State or federal law requires a prescription." "Contact Lens Prescription" ("CLRX") means:

> a prescription, issued in accordance with State and Federal Law, that contains sufficient information for the complete and accurate filling of a prescription for contact lenses, including the following: 1) the name of the patient; 2) the date of examination; 3) the issue date and expiration date of the prescription; 4) the name, postal address, telephone number and [fax] number of the prescriber; 5) the power, **material or manufacturer or both** of the prescribed contact lens; 6) **the base curve** or appropriate designation of the prescribed contact lens; and 7) **the diameter, when appropriate,** of the prescribed contact lens; and 8) in the case of a private label contact lens, the name of the manufacture, trade name of the private label brand, and, if applicable, trade name of equivalent brand name (emphasis added; 16 CFR §315.2.)

"A CLRX is a complex set of parameters that prioritize the wearers' health and safety, and is not simply based on refractive power." **Ex. 1:023**. "This list demonstrates that law makers are clear on what learned professionals require to verify a CLRX, and what sellers are tasked [with] collecting or verifying." *Id*. at 022. Indeed, "a seller", such as Defendant, "may sell contact lenses *only in accordance with* a contact lens prescription *for the patient* [.] 16 CFR §315.5. Moreover, a seller may not alter a CLRX. *Id*.; 15 USCS § 7603(f);

After a *prescriber* issues a CLRX to a consumer, a *seller*, like Defendant, may only sell contact lenses to that consumer *in accordance with a CLRX for the consumer* that is 1) presented to the seller by the consumer or prescriber directly or by fax; or 2) *verified* by direct communication[2] (emphasis added). 15 USC §7603(a). Verification is the process whereby a seller asks the consumer's prescriber to confirm the accuracy of the CLRX information provided by the consumer. It is a safeguard to ensure the consumer receives lenses in accordance with his/her unaltered CLRX when the consumer or prescriber does not present the CLRX directly to the seller. Verification can be avoided entirely by simply requesting a copy of the CLRX from the consumer.

When a CLRX is not directly provided and a seller must verify it, a seller **shall** provide the prescriber the following information through direct communication:

> (1) the patient's name and full address; (2) the contact lens power, manufacturer, **base curve or appropriate designation, and diameter when appropriate**; (3) the quantity of lenses ordered; (4) the date of the patient request; (5) the date and time of verification request; (6) the name of a contact person at the seller's company, including [fax] and telephone numbers; and (7) if the seller opts to include the prescriber's regular business hours on Saturdays as "business hours" for purposes of [waiting 8 "business hours" – see subsection (c)(3)], a clear statement of the prescriber's regular Saturday business hours.

(emphasis added; see, 16 CFR 315.5(b).)

After the seller provides that information to the prescriber, a consumer's CLRX is deemed verified and the seller may sell the consumer *lenses in accordance with that*

[2] "Direct Communication" means completed by phone, fax or email. 16 CFR 315.2.

*CLRX* only if: (1) the prescriber confirms the CLRX is accurate by direct communication with the seller; (2) the prescriber informs the seller through direct communication that the CLRX is inaccurate and provides the accurate CLRX; or (3) the prescriber fails to communicate with the seller within eight (8) business hours after receiving from the seller the CLRX information listed above. 16 CFR 315.5(c).

As explained below, each of the foregoing rules applied to every sale that Defendant made irrespective of what lens any consumer was prescribed.

### C. DEFENDANT'S BUSINESS MODEL & PRACTICES

Defendant sells goods it represents to be "contact lenses". The only forum through which it sells its "contact lenses" is its website, hubblecontacts.com. (Defendant's Response to RFA 12, attached as **Exhibit 5** to the Declaration of Ryan Carlson ("Carlson Decl.") ¶ 5.) The only contact lenses Defendant sold and/or shipped to consumers during the class period were Hubble brand lenses with a base curve of 8.6mm and a diameter of 14.2mm *regardless of what lenses the respective consumer's prescriber prescribed him or her*. (Defendant's Responses to RFA No. 3-5, attached as **Exhibit 6** at Carlson Decl. ¶ 6.) It also knows that consumers would require a CLRX for Hubble brand lenses with a base curve of 8.6mm and diameter of 14.2mm in order for Defendant to lawfully sell its lenses. **Ex. 6:006-7**

As discussed further below, Defendant sells their lenses by luring consumers into enrolling in a monthly subscription "trial" whereby they ship consumers a two-week supply of "contact lenses" for $1.00. After the consumer's trial period, the subscription auto-renews monthly, the price increases to $30-40[3], and the consumer receives a one-month supply of Hubble brand lenses with a base curve of 8.6mm and a diameter of 14.2mm irrespective of what they were prescribed. To enroll in this service, all consumers are asked to enter into Defendant's website is the strength of their contact lenses, prescriber's name, payment information, and address.

---

[3] The subscription ranged from $30-40/month during the class period. Defendant's Responses to Interrogatory No. 14, attached as **Exhibit 7** at Carlson Decl. ¶ 7.

At no point during the class period did Defendant *require* consumers to present their CLRX directly to Defendant so as to obviate Defendant's need to verify it. (Hubble Rule 30(b)(6) Deposition attached to the Carlson Decl. as **Exhibit 8, at Pg. 010**.) Only 5925 out of 95,500+ did so. See, **Exhibit 9** attached to Carlson Decl. ¶ 9. Defendant also represented to every consumer that it would verify the consumer's CLRX before selling them contact lenses. **Ex. 8:008**; and, see images of Defendant's Website attached as **Exhibit 10** at Carlson Decl. ¶ 10. Consequently, Defendant was required to verify *the consumers' respective CLRX* prior to selling them any lenses *in accordance with their CLRX*. 15 USC §7603(a)(2).

Notwithstanding their knowledge and the verification requirements of 16 CFR 315.5(b), lens power and prescriber name was the only information unique to a consumer's respective CLRX that Defendant requested or obtained from consumers during the class period via its website. **Ex. 8:010.** Hubble obtains powers by way of two drop-down menus on its website's order page under the heading "YOUR PRESCRIPTION" (more on this below). **Ex. 10-005, 024, 032, 039**. It then asks consumers to type a name into a fillable field further down on the order page. *Id*.

Unlike the strength and prescriber name, Defendant never asked consumers to affirmatively input the base curve or diameter from their CLRX. **Ex. 8:014.** Defendant has always just automatically "assumed" each CLRX is for Hubble brand lenses with a base curve of 8.6mm and a diameter of 14.2mm ***Id*. at 011-012; 021-023**. They also "assign" them expiration dates based on the date the consumer's order is placed. ***Id*. at 013**. It follows that Defendant never obtained sufficient information to perform verifications of *valid, unaltered* CLRXs pursuant to 16 CFR 315.5(b-c). Hubble knew that if it had requested complete CLRX information, it would not be able to sell its one-size-fits-all lenses since, until recently, few prescribers prescribed its lenses or had the fitting kits to do so.

///

///

### D. DEFENDANT'S LENSES WERE VERY RARELY PRESCRIBED

Defendant knew that *very few doctors* could and actually do prescribe its lenses. As a foundational matter, Defendant knows of no doctors who prescribe a specific lens without first conducting a fitting of that lens. **Ex. 8:024-025.** Furthermore, Defendant is unaware of any prescriber who prescribes its lenses without first requesting a Hubble fitting kit. ***Id.* at 027-028**. In fact, Defendant confirmed ***a total of only 119 fitting kits to 12 different California prescribers during the class period, with the last one sent on June 22, 2023.*** Fitting Kit Index attached as **Exhibit 11** at Carlson Decl., ¶ 11; and, **Ex. 8:029-030 and 033**.

Additional actual knowledge of this fact stems from the thousands[4] of consumer complaints Defendant has received during the class period, which expressly advise Defendant that the consumer was never prescribed its lenses and received Hubble lenses in error. Consumer Complaints attached as **Exhibit 12** at Carlson Decl. ¶12. Identical consumer complaints have also been brought to light through enforcement actions alleging violations similar to those alleged herein, such as that filed by the Federal Trade Commission on January 22, 2022, in the matter *United States of America v. Vision Path, Inc. d/b/a Hubble Contacts.* (US Dist. Ct., Dist of D.C., 1:22-cv-00176 – the "FTC Action"[5]), and, the May 2022 action filed by the Attorney General of Texas in *State of Texas v. Vision Path, Inc.* (Bexar County Court, Case No. 2022CI09972[6]). As alleged in the 2022 FTC Action:

> In order to fit lenses on patients' eyes, prescribers typically obtain fitting kits from contact lens manufacturers. Typically, prescribers will not prescribe a contact lens that they have not seen on their patients' eyes… [and]; Hubble knowingly placed verification calls and faxes to prescribers who have never received fitting kits for Hubble lenses, and thus do not prescribe Hubble lenses

RJN No. 1, FTC Action at ¶¶ 11, 37.

---

[4] Only a limited sampling is produced herewith. See, Carlson Decl. ¶ 12.
[5] Req. for Judicial Notice Nos. 1-2; **Exhibits 13-14** to Carlson Decl. ¶¶ 13-14.
[6] Req. for Judicial Notice No. 3; **Exhibit 15** to Carlson Decl. ¶ 15.

These allegations date back to 2022, but Defendant's involvement with the FTC's investigation that culminated in the FTC Action dates back to early 2017. Letter attached as **Exhibit 16** at Carlson Decl. ¶ 16. Complaints about the exact same issues began at the company's founding (*id.*) and have persisted through the present. **Ex. 12**; and, RJN Nos. 1-3. These facts, Defendant's knowledge, Dr. Alexander's expert opinions (**Ex. 1**), and common sense all dictate that if no one is receiving Hubble's fitting kits, no one is prescribing its lenses. The law dictates that if no prescriber is prescribing their lenses, no seller can sell them. 16 CFR 315.5(a); 15 USCS §7603(a).

Notwithstanding everything above, Defendant has made over 850,000 unique sales of its one-size-fits-all contact lenses to at least 95,543 different consumers in California since April 28, 2019. Order, Sales and Verification Data, attached as **Exhibit 17** at Carlson Decl. ¶ 17. During that same time, Defendant has generated tens of millions in net revenue from putative class members. *Id*.

### E. DEFENDANT MADE THE SAME MISREPRESENTATIONS AND OMISSIONS TO THE ENTIRE PROPOSED CLASS

With the exception of immaterial aesthetic changes, the order page has remained virtually unchanged during the entire class period. **Ex. 10.** Importantly, all the information supporting Plaintiff's misrepresentation and concealment theories underlying his CLRA claims has remained unchanged during the entire class period.

#### 1. Misrepresentations

<u>"Contact Lens" Misrepresentation</u>: Defendant has always represented the goods they sell as "Contact Lenses". **Ex. 10** *generally*; 4AC ¶¶17-21, 60, 66, 67, 75, 76. That label necessarily presupposes they are sold in accordance with a CLRX. (15 USCS §7603(a); Exhibit 1-[20-23, 30].) Defendant calls its goods Contact Lenses, however, despite never obtaining either a CLRX directly from a consumer or sufficient information with which to perform a valid CLRX verification. 15 USCS §7603(c). **Ex. 8:009-014; Ex. 10,** generally**.**

///

<u>"*Your* Prescription" Misrepresentation</u>: When purchasing "lenses" from Defendant, Defendant has always required consumers to input at the point of purchase only limited information from their CLRX, using two dropdown menus under the prominent heading "YOUR PRESCRIPTION." **Ex. 10-005, 024, 032, 039**; 4AC ¶¶17-21, 60, 66, 67, 75, 76. However, the only information Defendant requires from consumers at the point of purchase has been their right-eye and left-eye powers and the name of their prescriber. **Ex. 8:009-014**; see also **Ex. 10-005, 024, 032, 039, 046, 057**; 4AC ¶¶17-21, 60, 66, 67, 75, 76.

### 2. Omissions

In addition to the foregoing, Defendant also failed to disclose material information to consumers at the point of purchase.

<u>Substitution Omission</u>: First, Defendant never advised consumers that contact lens sellers can only sell contact lenses to consumers in accordance with the consumer's respective CLRX; i.e., that Defendant can only sell consumers lenses if the consumers are prescribed Hubble lenses. **Ex. 10**, *generally.* Similarly, Defendant failed to disclose to consumers that, by enrolling in their subscription service, they might receive a contact lens other than that which they were prescribed. *Id.*

<u>Verification Omission:</u> After purporting to collect all of the information they supposedly required under the prominent heading "YOUR PRESCRIPTION" and representing to consumers that they would verify that information with the consumer's prescriber, Defendant never disclosed to consumers that the Defendant would actually seek prescriber verifications of prescriptions for Hubble lenses with a base curve of 8.6mm and a diameter of 14.2mm irrespective of what the consumer was actually prescribed or whether that CLRX was expired. **Ex. 10-005, 024, 032, 039**; 4AC ¶23-24, 60, 66, 67, 75, 76. This was especially misleading in light of *partial* representations made elsewhere on the website, like "don't worry, we'll verify all this information with your doctor." **Ex. 10-006, 007, 025, 027, 033-34, 042, 047, 049, 059,** see also, **Ex. 8:046.**

Health & Safety Omission: Defendant failed to advise consumers at the point of purchase that wearing contact lenses other than those prescribed poses significant health and safety risks. **Ex. 10**, generally.

## IV. LEGAL ARGUMENT

### A. CLASS CERTIFICATION SHOULD BE GRANTED

As the foregoing facts demonstrate, the merits strongly support Plaintiff's claims. Nonetheless, the issue presented by this motion is not whether Hubble's omissions and misrepresentations are false and misleading, but whether Plaintiff's claims can be adjudicated on a class-wide basis.

Consumer protection claims are ideal for class certification. *See, e.g.*, *Amchem Prods. v. Windsor, Inc.*, 521 U.S. 591, 625 (1997). In fact, false advertising cases based on uniform misrepresentations are routinely certified as class actions under California law within this Circuit–as well as in this Court–because common questions of fact and law predominate. *See*, *e.g.*, *Forcellati v. Hyland's, Inc.*, 2014 WL 1410264, *8, n. 5 (C.D. Cal. Apr. 9, 2014) (collecting cases). "[C]onsumer class actions and representative UCL actions serve important roles in the enforcement of consumers' rights. . . . These actions supplement the efforts of law enforcement and regulatory agencies. This court has repeatedly recognized the importance of these private enforcement efforts." *In re Tobacco II*, 46 Cal.4th 298, 313 (2009) (internal citations and quotation marks omitted).

Courts certify classes pursuant to Rule 23 when: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims of the class; and (4) the representative parties will fairly and adequately protect the interests of the class[,] and the class satisfies the predominance and superiority prongs. Fed. R. Civ. P. 23. In deciding motions for class certification, the Court "examine[s] the merits of the underlying claim . . . only in as much as it must determine whether common questions exist; not to determine whether class members

could actually prevail on the merits of their claims." *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 983 n.8 (9th Cir. 2011); *see also Amgen Inc. v. Conn. Ret. Plans & Trust Funds*, 133 S. Ct. 1184, 1195 (2013) ("*Amgen*") ("Merits questions may be considered to the extent–but only to the extent–that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied. . . . [A]n evaluation of the probable outcome on the merits is not properly part of the certification decision." (Citation and quotation marks omitted.)

The Court has broad discretion to grant class certification. *Bateman v. Am. Multi-Cinema, Inc.*, 623 F.3d 708, 712 (9th Cir. 2010). "Inadmissibility alone is not a proper basis to reject evidence submitted in support of class certification." *Sali v. Corona Reg'l Med. Ctr.*, 889 F.3d 623, 632 (9th Cir. 2018).

**B. THE CLASS IS ADEQUATELY DEFINED & ASCERTAINABLE**

Although not specifically stated in Rule 23, courts have held the class must be adequately defined to proceed. *See Keegan v. Am. Honda Motor Co.*, 284 F.R.D. 504, 521 (C.D. Cal. 2012). A class definition is sufficient when it relies on objective, verifiable criteria. *Id.* at 521. "Under the law of th[e] [Ninth [C]ircuit, it is enough that the class definition describes 'a set of common characteristics sufficient to allow' an individual to determine whether she is a class member with a potential right to recover." *Krueger v. Wyeth, Inc.*, 310 F.R.D 468, 475 (S.D. Cal. 2015). "[T]he language of Rule 23 neither provides nor implies that demonstrating an administratively feasible way to identify class members is a prerequisite to class certification." *Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1121, 1133 (9th Cir. 2017). Here, Plaintiffs seek to certify the following class:

> **All persons residing in California who purchased a subscription for Hubble Classic Daily lenses from hubblecontacts.com between April 25, 2019 and the present who were not prescribed Hubble Classic Daily lenses, and who do not seek personal injury damages.**

The class is easily ascertainable from Hubble's records. **Exs. 9, 17.** The class definition excludes the small group of approximately 3970 individuals, identified

through Defendant's records, who were actually prescribed Hubble lenses. **Ex. 9.** As is common practice, it also excludes those who seek personal injury damages. See e.g., *In re Delta Air Lines, Inc.*, 2023 WL 2347074, at *13 (C.D. Cal. Feb. 8, 2023); *Krueger v. Wyeth, Inc.*, 2011 WL 8971449, at *1 (S.D. Cal. Mar. 30, 2011); *Hamm v. Mercedes-Benz USA, LLC*, 2021 WL 1238304, at *7 (N.D. Cal. Apr. 2, 2021); *Beck-Ellman v. Kaz USA, Inc.*, 283 F.R.D. 558, 566 (S.D. Cal. 2012); *Banks v. Nissan N. Am., Inc.*, 301 F.R.D. 327, 329 (N.D. Cal. 2013).

## C. PLAINTIFF SATISFIES THE RULE 23(A) PREREQUISITES

### 1. The Proposed Class is Sufficiently Numerous

The proposed Class is "so numerous that joinder of all members is impracticable." *See* Fed. R. Civ. P. 23(a)(1). As a general rule, classes of 40 or more suffice. 5-23 Moore's Federal Practice - Civil § 23.22[1][b]; *Romero v. Producers Dairy Foods, Inc.*, 235 F.R.D. 474, 485 (E.D. Cal. 2006)("A class with over forty members is presumed to satisfy the numerosity prerequisite.") Defendant's records indicate the class has more than 95,000 individuals. **Ex. 17.** Joinder of that many individuals' claims would be impractical, if not impossible. The proposed class is sufficiently numerous.

### 2. Plaintiff's Claims Raise Issues Common to the Class

Commonality requires that class members share a common claim that is "capable of classwide resolution," meaning that determination of the claims' "truth or falsity will resolve an issue that is central to [the claims'] validity. . . in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011) ("*Dukes II*"). Commonality is a "limited burden": there need be only one common question. *Mazza v. Am. Honda Motor Co.*, 666 F.3d 581, 589 (9th Cir. 2012). "Where the circumstances of each particular class member vary, but retain a common core of factual or legal issues with the rest of the class, commonality exists." *Parsons v. Ryan*, 754 F.3d 657, 675 (9th Cir. 2014) (alteration in original). "What matters to class certification . . . [is] the capacity of a classwide proceeding to generate common answers apt to drive the

resolution of the litigation." *Dukes II*, 564 U.S. at 350 (cleaned up).

Here, Plaintiffs' claims arise from a uniform omissions and misrepresentations, meaning Class Members were exposed to the same conduct, the truth or falsity of which will resolve a common issue central to all claims "in one stroke." *Guido v. L'Oreal, USA, Inc*., 2013 U.S. Dist. LEXIS 94031, *12, 2013 WL 3353857; *Forcellati v. Hyland's, Inc*., 2014 U.S. Dist. LEXIS 50600, *27-28, 2014 WL 1410264 (same).

Materiality is also a common issue because "this inquiry focuses on *the [d]efendants'* representations." *Bruno v. Quten Research Inst., LLC*, 280 F.R.D. 524, 537 (C.D. Cal. 2011) (collecting cases) (emphasis added). The omission and misrepresentations are material to a reasonable consumer. (See, Elizabeth Howlett, Ph.D's Expert Report, attached as **Exhibit 3** to the Declaration of Elizabeth Howlett.) As such class-wide reliance is presumed or inferred. *Stearns v. Ticketmaster Corp*., 655 F.3d 1013, 1022 (9th Cir. 2011); *Lytle v. Nutramax Labs., Inc*., 114 F.4th 1011, 1022 (9th Cir. 2024). Importantly, materiality is evaluated through "a single, objective 'reasonable consumer' standard–not, as [d]efendants urge, a subjective test that inquires into each class member's experience with the product." *Bruno,* 280 F.R.D. at 537. Thus, commonality is satisfied.

### 3. Plaintiff's Claims Are Typical of the Class

Rule 23(a)(3) typicality is satisfied where a named plaintiff's claims are "reasonably co-extensive" with absent class members' claims. *Hanlon v. Chrysler Corp*., 150 F.3d 1011, 1020 (9th Cir. 1998); *see also Rodriguez v. Hayes*, 591 F.3d 1105, 1124 (9th Cir. 2010). "The test of typicality 'is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct.'" *Hanon v. Dataproducts Corp*., 976 F.2d 497, 508 (9th Cir. 1992) (citation omitted). The interests and claims of named plaintiff and class members need not be identical; if their claims are based on the same legal or remedial theory, differing fact situations do not defeat typicality. *Ellis v. Costco Wholesale Corp*., 657

F.3d at 984; *See also Guido v. L'Oreal, USA, Inc.,* 284 F.R.D. 475, n. 6 (whether the misrepresentation at issue "may not have had the 'same impact on all consumers' and may not have informed an individual's buying decision is not relevant, because the standard is an objective one.").

Typicality is met here as Plaintiff and the proposed Class assert the same claims arising from the same course of conduct: Defendant's uniform omission and misrepresentation of regarding its contact lenses. And, like every other Class Member, Plaintiff was injured when he paid money to purchase Hubble lenses.

### 4. Plaintiff and Counsel Will Adequately Represent the Class

Plaintiff Wesley Africa seeks to be appointed as Class Representative. Rule 23(a)(4) requires a Plaintiff show that "the representative parties will fairly and adequately protect the interests of the class." Class representatives are adequate when: (1) there is no conflict of interest between the representatives, their counsel, and absent class members; and (2) the representative and their counsel will "prosecute the action vigorously on behalf of the class." *Hanlon*, 150 F. 3d at 1020; *see also Wiener v. Dannon Co*., 255 F.R.D. 658, 667 (C.D. Cal. 2009).

Here, Plaintiff's interests are aligned with those of the class because he has been harmed by the same common misconduct – or mislead and/or deceived by the same misrepresentations and omissions – and seeks the same relief. Specifically, he paid Defendant a monthly subscription fee in exchange for contact lenses that were *not* sold in accordance with his prescription. Bank statements attached as **Exhibit 18** to Declaration of Wesley Africa ("Africa Decl.") ¶2; Plaintiff's CLRX attached as **Exhibit 19** at Africa Decl. ¶3. As a result of such conduct, Plaintiff claims that Defendants violated the CLRA, UCL and FAL and seeks the same amount of restitution, damages and injunctive relief as the class.

Plaintiff has actively participated in the litigation on behalf of the class by consistently communicating with counsel; responding to discovery, and participating in mediation. Africa Decl. ¶7. He is fully aware that he is pursuing this action as a

potential Class Representative of a Class of Hubble customers misled by Hubble's omission and misrepresentations of fact, and he is knowledgeable and informed about the relief he is requesting. *Id*. ¶¶5-6 Thus, Plaintiff's interests are aligned with those of other Class Members, he has no conflicts of interest, and he is adequate and qualified to be appointed as Class Representative. *Id*.

Plaintiff's counsel has also aggressively pursued this case for the past three years, including extensive law-and-motion and discovery (as demonstrated, in part, by this Court's electronic docket), as well as one completed mediation, and preparation for a mediation that was cancelled by Defendant at the last minute. Carlson Decl. ¶18; and Declaration of Andrew Kubik ("Kubik Decl.") ¶16. Plaintiff's counsel also have significant experience prosecuting complex and class action litigation (Carlson Decl. ¶¶ 2-4; Kubik Decl. ¶¶ 4-15) such that they can and will adequately represent the interests of the class and all absent class members.

### D. THE REQUIREMENTS OF RULE 23(B)(3) ARE SATISFIED

Under Rule 23(b)(3), a class action may be maintained if "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). Rule 23(b)(3) encompasses cases "in which a class action would achieve economies of time, effort, and expense, and promote. . . uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results." *Amchem Prods., Inc.,* 521 U.S. at 615; *Wiener*, 255 F.R.D. at 668. "When one or more of the central issues in the action are common to the class and can be said to predominate, the action may be considered proper under Rule 23(b)(3) even though other important matters will have to be tried separately, such as ***damages*** or some ***affirmative defenses*** peculiar to some individual class members." *AMANDA JOLICOEUR-LOUIS & SOPHIE PHILIPS, Plaintiffs, v. CONSERVICE, LLC, Defendant*., No. 2:24-CV-03253-HDV-BFM, 2026 WL 1849879, at *11 (C.D.

Cal. May 11, 2026 (emphasis in original) quoting *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453, 136 S. Ct. 1036, 1045, 194 L. Ed. 2d 124 (2016)

**1. Common Issues Predominate**

Rule 23(b)(3) demands only predominance of common questions, not exclusivity or unanimity of them. "When common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication, there is clear justification for handling the dispute on a representative rather than on an individual basis." *Hanlon*, 150 F.3d at 1022 (citation omitted); *Edwards v. The First Am. Corp.*, 251 F.R.D. 454, 458 (C.D. Cal. 2008) ("Predominance is determined not by counting the number of common issues, but by weighing their significance"); *In re High-Tech Emple. Antitrust Litig*., 985 F. Supp. 2d 1167, 1187 (N.D. Cal. 2013) ("The predominance inquiry is not a mechanical inquiry of "bean counting."). Rule 23(b)(3) "does *not* require a plaintiff seeking class certification to prove that each element of her claim is susceptible to classwide proof." *Amgen*, at 1196 (emphasis in original).

As such, "[w]hen one or more of the central issues in the action are common to the class and can be said to predominate, the action will be considered proper . . . even though other matters will have to be tried separately." *Gartin v. S & M Nutec, LLC*, 245 F.R.D. 429, 435 (C.D. Cal. 2007) (citation omitted; alteration in original); *and, Wiener*, 255 F.R.D. at 668.

The Supreme Court has noted that predominance is readily met in consumer fraud cases. *Amchem Prods., Inc.*, 521 U.S. at 625. And "[c]ourts in California routinely find that this inquiry focuses on the defendants' representations about the product and applies a single, objective 'reasonable consumer' standard. *Bruno* at 537.

Under California law, "class members in CLRA and UCL actions are not required to prove their individual reliance on the allegedly misleading statements." *Bradach v. Pharmavite, LLC*, 735 F.App'x 251, 254 (9th Cir. 2018). "Instead, the standard in actions under both the CLRA and UCL is whether 'members of the public

are likely to be deceived.' " (*Id.*) "For this reason, courts have explained that CLRA and UCL claims are 'ideal for class certification because they will not require the court to investigate class members' individual interaction with the product.' [citation]." *Bradach v. Pharmavite, LLC,* 735 F.App'x 251, 254 (9th Cir. 2018); citing, *Tait v. BSH Home Appliances Corp*., 289 F.R.D. 466, 480 (C.D. Cal. Dec. 20, 2012).

Common issues unquestionably predominate Plaintiffs' fraud-based claims. With respect to liability, as noted above, there are two overriding common questions: (1) whether Defendant made materially false omissions and misrepresentations of fact in connection with the sale of Hubble lenses; and (2) whether the omissions and misrepresentations of fact was likely to deceive a reasonable consumer. The first common question is binary–either Defendant made the misrepresentations and omitted the material information, or not. This question, on its own, predominates over any potential individual questions. It is one of, if not *the*, most significant aspect of this case and "can be resolved for all members of the class in a single adjudication." *Hanlon*, 150 F.3d at 1022. If each Class Member pursued his or her claim individually, the evidence regarding the falsity of Defendant's omission and misrepresentations would be identical in each case. *See O'Donovan v. CashCall, Inc.*, 278 F.R.D. 479, 493 (N.D. Cal. 2011) (in finding predominance, court found that each of the common questions can be proven with "generalized evidence…on a class-wide basis").

The second predominating question–whether the omissions and misrepresentations are likely to deceive a reasonable consumer–is an objective inquiry based on the materiality of the representation which is the same test for all of Plaintiffs' claims. *See In re Tobacco II*, 46 Cal. 4th at 327 (CLRA and UCL claims); *see also Kwikset Corp.*, *v. Superior Court*, 51 Cal. 4th 310, 332–33 (2011). And, the misrepresentation need only be a "factor"–not the only factor nor even a "predominating factor"–motivating the purchase. *See In re Tobacco II*, 46 Cal. 4th at 326–27; *see also Kwikset Corp.*, *v. Superior Court*, 51 Cal. 4th at 327 (2011)(same). As the Court found in *Forcellati*, whether "a large number of factors may have gone

into each consumer's decision to purchase Defendants' products is immaterial here given the objective materiality of the alleged misrepresentations." 2014 WL 1410264, at *11. A class-wide inference of reliance is permitted "notwithstanding a showing by defendant that some class members would have bought the product with knowledge of the representation's falsity." *Krueger v. Wyeth, Inc.*, 2011 U.S. Dist. LEXIS 154472, at *12, citing *Steroid Hormone Product Cases*, 181 Cal. App.4th 145, 157 (2010); *Elkies v. Johnson & Johnson Servs., Inc.*, 2018 WL 11223465, at *9 (C.D. Cal. Oct. 18, 2018) (Wu, J.) ("This case will largely concern common key issues presented by common evidence – expert surveys/reports, product packaging, materials produced by Defendants regarding their products, marketing and costs.").

**a. Reliance and Causation Do Not Defeat Predominance**

"The UCL reflects the Legislature's intent to discourage business practices that confer unfair advantages in the marketplace to the detriment of both consumers and law-abiding competitors." *Rose v. Bank of Am., N.A.*, 57 Cal.4th 390, 396 (2013).The CLRA, UCL and FAL "prohibit 'not only advertising which is false, but also advertising which[,] although true, is either actually misleading or which has a capacity, likelihood or tendency to deceive or confuse the public.'" *Brady v. Bayer Corp.*, 26 Cal. App. 5th 1156, 1173, 237 Cal. Rptr. 3d 683, 697 (2018); see also, *Beckman v. Arizona Canning Co., LLC*, 2019 WL 4277393, at *11 (S.D. Cal. Sept. 9, 2019)("It is quite possible to comply with FDA regulations and still violate the policy or spirit underlying those regulations.")

Relief under the UCL is available "without individualized proof of deception, reliance and injury." *Stearns v. Ticketmaster Corp.*, 655 F.3d at 1020 (quoting *In re Tobacco II Cases*, at 326-27. "[T]he UCL's focus [is] on the defendant's conduct, rather than the plaintiff's damages, in service of the statute's larger purpose of protecting the general public against unscrupulous business practices." *In re Tobacco II* at 312. The CLRA is intended "to protect consumers against unfair and deceptive business practices and to provide efficient and economical procedures to secure such

protection." Cal. Civ. Code § 1760. It is to be "liberally construed and applied to promote its underlying purposes." *Keegan v. Am. Honda Motor Co.*, 838 F. Supp. 2d 929, 938 (C.D. Cal. 2012).

It is well-established that to succeed on a consumer protection claim under the UCL, CLRA and FAL, Plaintiffs need only "show that members of the public are likely to be deceived." *Moorer v. StemGenex Med. Grp., Inc.*, 2017 U.S. Dist. LEXIS 53294, at *26 (S.D. Cal. April 6, 2017) ; *see also Forcellati*, 2014 WL 1410264, at *9 ("For purposes of class certification, the UCL, FAL, and CLRA are materially indistinguishable. . . . Each statute allows Plaintiffs to establish the required elements of reliance, causation, and damages by proving that Defendants made what a reasonable person would consider a material misrepresentation.") (citing *Delarosa,* 275 F.R.D. at 589 n.3; *Bruno,* 280 F.R.D. at 534); *Noohi v. Johnson & Johnson Consumer Inc.*, 146 F.4th 854, 869 (9th Cir. 2025), *cert. denied,* 224 L. Ed. 2d 517 (Apr. 20, 2026)

Further, the California consumer protection laws take an objective approach – that of the **reasonable** consumer, not the **particular** consumer. A business practice is likely to deceive the public where "it is probable that a significant portion of the general consuming public or of targeted consumers, acting reasonably in the circumstances, could be misled." *Lavie v. Proctor & Gamble Co.*, 105 Cal. App. 4th 496, 508 (2003).

First, to prove a UCL claim, one need only show that the members of the public are likely to be deceived. *In re Tobacco II*, 46 Cal. 4th at 312. No proof of individual reliance, deception, or injury is required, because the test is an objective one. *Beck-Ellman v. Kaz USA*, Inc., 283 F.R.D. at 568; *Johns v. Bayer Corp*., 280 F.R.D. 551, 558 n.4 (S.D. Cal. 2012); *Tait v. BSH Home Appliances Corp*., 289 F.R.D. at 480.

Thus, for the Class's UCL claim, reliance and causation must be established only for lead plaintiffs. *In re Tobacco II*, 46 Cal. 4th at 326-27; *Mass. Mutual,* 97 Cal. App. 4th at 1288. Plaintiff has testified that he made a purchase of contact lenses

through Hubble's website and was deceived by the omitted and misrepresented material information. (Africa Decl. ¶ 4). Plaintiff's testimony establishes causation as to the omissions and misrepresentations and puts their falsity at issue, at least as to his individual claims. And, where, as here, the omission and misrepresentations are uniform and all class members were "exposed" to them, proof of class-wide reliance is not a requirement for a class to recover under the UCL. *See Gutierrez v. Wells Fargo Bank NA*, 589 Fed. Appx. 824, 827 (9th Cir. 2014) (rejecting defendant's argument that district court was not "empowered" to award class-wide restitution under the UCL because class-wide reliance had not been established because "the record is replete with examples of [the defendant's] false and misleading statements" (citing *In re Tobacco II*); *McKinnon v. Dollar Thrifty Auto. Grp. Inc.,* 2015 WL 4537957, at *7 (N.D. Cal. July 27, 2015) (all the UCL requires is evidence that "all members of the class were exposed to [the] deceptive practice"); *see also Circle Click Media LLC v. Regus Mgmt. Grp. LLC,* 2015 WL 6638929, at *13 (N.D. Cal. Oct. 29, 2015) (same); *Brown v. Hain Celestial Grp. Inc.,* 2015 WL 3398415, at *8 (N.D. Cal. May 26, 2015) (UCL does not require individualized proof of injury and causation).

///

///

///

///

///

///

///

///

///

///

///

///

Further, although the CRLA does require a showing of class-wide reliance, the CLRA is to be "liberally construed" and "[c]onduct that is 'likely to mislead a reasonable consumer' thus violates the CLRA." *Colgan v. Leatherman Tool Grp., Inc*., 135 Cal. App. 4th 663, 680 (2006). The Ninth Circuit has held that under the CLRA: "If the trial court finds that material misrepresentations have been made to the entire class, an inference of reliance arises as to the class." *Stearns*, 655 F. 3d at 1022 (emphasis in original; internal citations and quotation marks omitted); *see also Guido,* 284 F.R.D. at 482 (citing *Mass. Mutual,* 97 Cal. App. 4th 1282, 1292 (2002). As the Court in *Mass Mutual* explained:

> Causation as to each class member is commonly proved more likely than not by materiality. That showing will undoubtedly be conclusive as to most of the class. The fact that a defendant may be able to defeat the showing of causation as to a few individual class members does not transform the common question into a multitude of individual ones; plaintiffs satisfy their burden of showing causation as to each by showing materiality as to all.

97 Cal. App. 4th at 1292.

Materiality is "judged by an objective, 'reasonable man' standard," not individual subjective beliefs, and is "subject to common proof." *In re POM Wonderful Mktg. & Sales Practices Litig.*, No. ML 10-02199 DDP (RZx), 2012 WL 4490860, at *5 (C.D. Cal. Sept. 28, 2012), *decertified on other grounds*, 2014 WL 1225184 (C.D. Cal. Mar. 25, 2014) (citations omitted); *see also Amgen,* 133 S. Ct. at 1195-96 (because the "'[t]he question of materiality . . . is an objective one, involving the significance of an omitted or misrepresented fact to a reasonable investor,' materiality can be proved through evidence common to the class. Consequently, materiality is a 'common question[n]' for purposes of Rule 23(b)(3)") (citations omitted.)

*i) The Risk of Harm Creates a Presumption of Materiality*

"Alleged defects that create 'unreasonable safety risks' are considered material." *Daniel v. Ford Motor Co.*, 806 F.3d 1217, 1225 (9th Cir. 2015).[7]

[7] *Gutierrez v. Carmax Auto Superstores Cal.*, 19 Cal. App. 5th 1234, 1239, 248 Cal. Rptr. 3d 61, 68 (2018)(omitted safety recall presumed material); "[*Gutierrez*] held that

"Materiality is presumed when statements significantly involve health, safety, or other issues that would concern reasonable consumers." *FTC v. QYK Brands LLC*, 2022 U.S. Dist. LEXIS 67380, at *14 (C.D. Cal. Apr. 6, 2022); see also, *Falco v. Nissan N. Am., Inc.*, 2016 U.S. Dist. LEXIS 46115, at *24 (C.D. Cal. Apr. 5, 2016)(safety risk stemming from alleged defect supported presumption of materiality); *Fox v. Nissan N. Am*., Inc., 2016 Cal. Super. LEXIS 5723, *7 ("omission of information that newly purchased or leased class vehicles were subject to a safety defect that might cause engine failure or damage is a significant defect that gives rise to the presumption of materiality."). As this Court has explained, "Plaintiffs need not even 'produce a consumer survey or similar extrinsic evidence to prevail on a claim that the public is likely to be misled by a representation,' and 'a lack of such evidence does not prevent class certification – even when defendants offer their own extrinsic proof suggesting that the misrepresentation is not material.'" *Favell v. Univ. of S. California*, 2025 WL 1774715, at *8 (C.D. Cal. May 13, 2025)(Wu, J.), quoting *Clevenger v. Welch Foods Inc.*, 342 F.R.D. 446, 459 (C.D. Cal. 2022)

Here, Plaintiff has alleged, and put forth evidence via the expert report of Dr. Alexander, that Defendant's conduct created an unreasonable safety risk. Specifically, the sale of contact lenses that does not match the actual prescription of the patient can lead to eye damage. **Ex. 1:035-038.** Therefore, materiality is presumed based on the nature of the undisclosed information.

*ii) Common Evidence of Materiality*

Even if the safety risk did not create a presumption of materiality, materiality is established, and an inference of class-wide reliance is warranted, based on survey evidence. "The results across all survey items converge on a single, unambiguous conclusion: the information allegedly omitted and misrepresented by Defendant was

---

the omitted information was material because it related to safety concerns—which would be important to the reasonable consumer." *Hodsdon v. Mars, Inc.*, 891 F.3d 857, 863 n.3 (9th Cir. 2018).

material to consumers' purchase decisions." **Ex. 3:048**. Dr. Howlett's expert opinions support a finding that the alleged misrepresentations and omissions are material. **Ex. 3,** *generally*.

**b. UCL "Unlawful" and "Unfair" Claims**

Plaintiff alleges that Hubble violated the CLR by: a) not selling contact lenses in accordance with a CLRX; b) altering consumers' CRLXs by substituting its own brand of lenses for those actually prescribed; c) failing to obtain sufficient information with which they could have completed a valid request for CLRX verification; consequently, d) not completing valid CLRX verifications; and e) effectively prescribing its own lenses despite not being a prescriber. 4AC ¶¶ 74-80. Plaintiffs also allege that these practices are unfair. *Id*. Common issues predominate Plaintiff's unlawful and unfair claims, since determination of liability will turn on Defendant's conduct. Courts routinely certify "unlawful" and "unfair" claims analogous to the allegations here. See, e.g., *Jeruchim v. J.M. Smucker Co.*, 2026 WL 178565, at *11 (N.D. Cal. Jan. 22, 2026); *Swartz v. Dave's Killer Bread, Inc.*, 2024 WL 4614551, at *5 (N.D. Cal. Sept. 20, 2024); see also, *Bruton v. Gerber Prods. Co.*, 703 F. App'x 468, 472 (9th Cir. 2017) (These [] regulations include no requirement that the public be likely to experience deception.).

**2. Relief Can Be Calculated Using Common Proof**

A court considering Rule 23(b)(3) certification looks at whether class monetary relief "can be determined without excessive difficulty and attributed to their theory of liability." *Just Film, Inc. v. Buono,* 847 F.3d 1108, 1121 (9th Cir. 2017) (citing *Comcast Corp. v. Behrend,* 569 U.S. 27 (2013)). "[T]he need for individual damages calculations does not, alone, defeat class certification." *Vaquero v. Ashley Furniture Indus., Inc.,* 824 F.3d 1150, 1155 (9th Cir. 2016); *Pulaski & Middleman, LLC v. Google, Inc.,* 802 F .3d 979, 988 (9th Cir. 2015).

For damages and restitution, "California law requires only that some reasonable basis of computation of damages be used, and the damages may be computed even if

the result reached is an approximation." *Pulaski & Middleman,* 802 F.3d at 989 ("The fact that the amount... may not be susceptible of exact proof or may be uncertain, contingent or difficult of ascertainment does not bar recovery.") (citation and internal quotation omitted); *Colgan v. Leatherman Tool Grp., Inc.* , 135 Cal. App. 4th 663, 699-700 (2006) (court has discretion in awarding UCL restitution though amount must be supported by substantial evidence). Moreover, "[t]hat the defendant might attempt to pick off the occasional class member here or there through individualized rebuttal does not cause individual questions to predominate." *Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC,* 31 F.4th 651, 668 (9th Cir. 2022) (citing *Halliburton Co. v. Erica P. John Fund, Inc.,* 573 U.S. 258, 276 (2014)). Here, there are appropriate methodologies available, using common sources of proof, to reasonably measure restitution and damages for the Class consistent with Plaintiff's liability theories. **Ex. 3:137-143**.

The UCL empowers courts to make any order "as may be necessary to restore to any person in interest any money or property, real or personal, which may have been acquired by means of' a violation. Bus. & Prof. Code § 17203.[8] The Court's discretion in this regard is "very broad," reflecting the statute's dual, concurrent purposes of: (1) returning money to those subjected to misconduct; and (2) deterring offenders from committing future violations. *Colgan,* 135 Cal. App. 4th at 695. "Where restitution is ordered as a means of redressing a statutory violation, the courts are not concerned with restoring the violator to the status quo ante. *The focus instead is on the victim*." *People ex rel. Kennedy v. Beaumont Inv., Ltd.*, 111 Cal. App. 4th 102, 134, 3 Cal. Rptr. 3d 429, 455 (2003)(emphasis added); *Spann v. J.C. Penney Corp.*, No. SA CV 12-0215 FMO (RNBx), 2015 U.S. Dist. LEXIS 42545, at *11 (C.D. Cal. Mar. 23, 2015) (recognizing that the difference between the price paid and the

[8] "The CLRA allows for restitution and injunctive relief, [] compensatory and punitive damages and attorney fees." *Doe 1 v. AOL LLC*, 719 F. Supp. 2d 1102, 1110 (N.D. Cal. 2010); Cal. Civ. Code §§ 1780(a)(1)-(5), (e).

value received is not the only way to calculate restitution).

Plaintiffs propose that restitution be calculated on the amounts Defendant received from each consumer since April 25, 2019.[9] This tracks Plaintiff's UCL liability theory, - i.e. it was deceptive, unlawful and unfair for Hubble to sell contact lenses that consumers were not prescribed. Under the circumstances, it is appropriate and well within the Court's discretion to award the restitution in the form of amounts consumers paid to Defendant, which certainly qualify as funds Defendant "may have… acquired by means of" its challenged conduct. Cal. Bus. & Prof. Code 17203; and *Krueger v. Wyeth, Inc.,* 396 F. Supp. 3d 931, 952-56 (S.D. Cal. 2019) (plaintiff could pursue full restitution measure at trial, notwithstanding defendant's evidence that product had benefits and some class members would have purchased it, where there was sufficient evidence to create triable issue as to whether reasonable consumers would not have purchased); *In re JUUL Labs, Inc., Mktg. Sales Pracs. & Prods. Liab. Litig.*, 609 F. Supp. 3d 942, 976 (N.D. Cal. 2022)(certifying class on full restitution where conduct involved "allegedly inherently unfair or illegal sales."). Indeed, these are amounts Hubble *would not have received but for its illegal conduct*.

To the extent restitution is unavailable, Plaintiff proffers a reliable methodology for determining class-wide damages using common evidence. Specifically, Dr. Howlett, designed a choice-based-conjoint ("CBC") to measure damages. "The CBC estimates the share of consumers who would not have purchased, and the price reduction that would have been necessary to induce remaining consumers to purchase, in the but-for world." **Ex. 3:137-143**. This methodology is routinely accepted by courts. See, *Johnson v. Glock, Inc.*, 2024 U.S. Dist. LEXIS 184041, at *44 (N.D. Cal. Sep. 30, 2024) (recognizing that conjoint analysis is widely accepted in non-disclosure

[9] Hubble charged a flat monthly subscription price and has records identifying the number of months each consumer subscribed. **Exs. 7:003; Ex. 17.** Full-refund damages would equate to the number of subscription months times the monthly charge for the duration of the subscription.

cases and collecting cases). "Class action plaintiffs may rely on a reliable though not-yet-executed damages model to demonstrate that damages are susceptible to common proof so long as the district court finds that the model is reliable and, if applied to the proposed class, will be able to calculate damages in a manner common to the class at trial." *Lytle v. Nutramax Labs., Inc.*, 114 F.4th at 1019. It is enough that "some reasonable basis of computation of damages be used, and the damages may be computed even if the result reached is an approximation." *Pulaski*, at 989 quoting *Marsu, B.V. v. Walt Disney Co.,* 185 F.3d 932, 938–39 (9th Cir.1999). Further, if damages calculations are made more difficult because the defendant has failed to maintain organized records, the consequences of such failure fall on the defendant. *Moore v. Ulta Salon, Cosmetics & Fragrance, Inc*., 311 F.R.D. 590, 621 (C.D. Cal. 2015).[10] Here, class-wide damages or restitution are capable of common proof.

Alternatively, Plaintiffs submit that the court should certify a liability-only class pursuant to Rule 23(c)(4). *Loritz v. Exide Techs.*, 2015 WL 6790247, at *23 (C.D. Cal. July 21, 2015) ("where the only bar to certification is the failure to present a damages model, the Court may certify a liability-only class."); *Spann v. J.C. Penney Corp.*, 307 F.R.D. 508, 533 (C.D. Cal. 2015), *modified*, 314 F.R.D. 312 (C.D. Cal. 2016) (certifying UCL and CLRA claims for liability only).

**3. A Class Action is Superior to Other Available Methods for Adjudicating Class Members' Claims**

Rule 23(b)(3) also requires that "a class action is superior to other available methods for the fair and efficient adjudication of the controversy." This superiority requirement is met where, as here, "recovery on an individual basis would be dwarfed by the cost of litigating on an individual basis." *Amgen*, 133 S. Ct. at 1202; *Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168, 1175 (9th Cir. 2010)

---

[10] *Dolphin Tours, Inc. v. Pacifico Creative Serv., Inc.,* 773 F.2d 1506, 1511 (9th Cir. 1985) (Wrongdoer "should not benefit because their wrongdoing makes it more difficult for the plaintiff to establish the precise amount of its injury"); *Rogerson Aircraft Corp.* v. *Fairchild Indus., Inc.,* 632 F. Supp. 1494, 1501 (C.D. Cal. 1986).

Plaintiff has incurred substantial costs from, *inter alia*, depositions, expert fees, mediation fees, document management, legal research and support costs. Carlson Decl., ¶18. These costs would grossly exceed the potential recovery of any consumer pursuing an individual action involving a monthly subscription that costs $30-40/month. Further, thousands of individual actions would consume significant judicial resources, which is contrary to the goals of efficiency and judicial economy advanced by Rule 23. *See Vinole v. Countrywide Home Loans, Inc*., 571 F.3d 935, 946 (9th Cir. 2009); *Delarosa v. Boiron, Inc*., 275 F.R.D. 582, 594 (C.D. Cal. Aug. 24, 2011). Even if, *arguendo*, some case management difficulties arise from certifying the class, a class action is still more manageable than thousands of individual actions involving amounts in controversy that are dwarfed by the costs associated with recovering them.

**E. THE REQUIREMENTS OF RULE 23(B)(2) ARE SATISFIED**

"Rule 23(b)(2) allows class treatment when 'the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole.'" *Dukes*, 564 U.S. at 360 (quoting Fed. R. Civ. P. 23(b)(2)). "[U]nlike Rule 23(b)(3), a plaintiff does not need to show predominance of common issues or superiority of class adjudication to certify a Rule 23(b)(2) class." *In re Yahoo Mail Litig*., 308 F.R.D. 577, 587 (N.D. Cal. 2015). It is enough that class members complain of a generally applicable pattern or practice, "[e]ven if some class members have not been injured by the challenged practice." *Walters v. Reno*, 145 F.3d 1032, 1047 (9th Cir. 1998). Rule 23(b)(2) "does not require [courts] to examine the viability or bases of class members' claims for declaratory and injunctive relief, but only to look at whether class members seek uniform relief from a practice applicable to all of them." *Ward v. United Airlines, Inc.,* 2021WL 534364, at *7 (N.D. Cal. Feb. 12, 2021) (citation omitted).

Here, Plaintiff seeks injunctive relief in the form of disclosure of information on Hubble's website and to subscribers. Specifically, disclosure of omitted material

information described herein, and cessation of unlawful practices. See, e.g., *Zeiger v. WellPet LLC*, 526 F. Supp. 3d 652, 687 (N.D. Cal. 2021) (emphasizing that "California's consumer protection laws permit courts to issue injunctions that serve different purposes and remedy different harms than retrospective monetary damages"). Defendants operated a centralized subscription model that subjected all consumers to identical, standardized deceptive and unlawful practices. The Court need only observe Defendants' uniform acts applied generally across the class. Because these allegations target a uniform business architecture and automated practices affecting every California subscriber in the exact same manner, Defendants have clearly "acted or refused to act on grounds that apply generally to the class" and certification of a Rule 23(b)(2) class is appropriate.

## V. CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court certify the proposed Class, appoint Plaintiff as Class representative and appoint Plaintiff's counsel as Class Counsel.

DATED: August 3, 2026

**MICHAEL SULLIVAN & ASSOCIATES, LLP**

By: *s/Ryan J. Carlson*
Eric H. De Wames
Ryan J. Carlson
Attorneys for Plaintiff,
**WESLEY AFRICA**

DATED: August 3, 2026

**LAW OFFICE OF ANDREW J. KUBIK**

By: *s/Andrew J. Kubik*
Andrew J. Kubik
Attorneys for Plaintiff,
**WESLEY AFRICA**

**WORD COUNT ATTESTATION**

I, Ryan J. Carlson, hereby certify that this memorandum contains 9,999 words and therefore complies with the stipulated limitation of 10,000 words (not to exceed 30 pages of text) (ECF No. 198), inclusive of all footnotes but exclusive of the caption page, tables of contents and authorities, and signature line/block.

Date: August 3, 2026

*s/Ryan J. Carlson*
Ryan J. Carlson, Esq.

**Attestation of E-Filed Signature**

I, Ryan J. Carlson, am the ECF user whose ID and password are being used to file this stipulation. Pursuant to C.D. Cal. L.R. 5-4.3.4, I attest that all other signatories listed, and on whose behalf the present filing is submitted, concur in the filing's contents and have authorized the filing.

Date: August 3, 2026

*s/Ryan J. Carlson*
Ryan J. Carlson, Esq.